CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILE, VA
FILED
APR 05 2012
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| KARA LYNNETTE ALLEN, | ) | CASE NO. 5:11CV00064 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | By: B. Waugh Crigler |
| Defendant. | ) | U. S. Magistrate Judge |

This challenge to a final decision of the Commissioner which denied plaintiff's September 30, 2008 protectively-filed applications for a period of disability, disability insurance benefits, and supplemental security income ("SSI") under the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 416, 423, and 1381 et seq., is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions, and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will RECOMMEND that an Order enter GRANTING the Commissioner's motion for summary judgment, AFFIRMING the Commissioner's final decision, and DISMISSING this action from the docket of the court.

In a decision dated September 2, 2010, an Administrative Law Judge ("Law Judge") found that plaintiff had not engaged in substantial gainful activity from September 1, 2003, her alleged date of disability onset, through December 31, 2008, the date she was last insured

1

("DLI").[1] (R. 9-11.) The Law Judge determined plaintiff's affective disorder and anxiety disorder were severe impairments. (R. 12.) He also concluded that, through her DLI, plaintiff did not suffer an impairment or combination of impairments which met or equaled a listed impairment. (R. 18.) Further, the Law Judge found that plaintiff possessed the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but that she was limited to simple, routine, low-stress (i.e. non-production rate) work in a stable environment that involves working with things rather than people, based on her non-exertional limitations. (R. 20-22.)

The Law Judge relied on portions of the testimony of Asheley Wells, a vocational expert ("VE"), adduced in response to questions premised on the Law Judge's RFC finding. (R. 23, 61-74, 184-185.) Based on this testimony, the Law Judge determined that plaintiff's RFC did not prevent her from performing her past relevant work as a hotel housekeeper/cleaner, and that a significant number of other representative jobs existed in the national economy that could be performed by a person with plaintiff's RFC. (R. 22-23.) Further, the Law Judge found that, even if plaintiff was limited to performing sedentary work, as suggested by plaintiff's physician Robert Kennedy, M.D., a significant number of sedentary jobs existed in the national economy for a person with plaintiff's RFC. (R. 23.) Accordingly, the Law Judge found plaintiff was not disabled under the Act. *Id.*

Plaintiff appealed the Law Judge's September 2, 2010 decision to the Appeals Council. (R. 1-3, 212-213.) In its May 12, 2011 decision, the Appeals Council found no basis to review the Law Judge's decision. (R. 1-2.) The Appeals Council denied review and adopted the Law

---

[1] In order to qualify for a period of disability and disability insurance benefits, plaintiff must establish that she became disabled prior to the expiration of her insured status, which was December 31, 2008. *See* 20 C.F.R. § 404.131(a).

2

Judge's decision as the final decision of the Commissioner. (R. 1.) This action ensued, briefs were filed, and oral arguments were held by telephone on February 7, 2012.

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and medical findings to determine the functional capacity of the claimant. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir. 1984). The regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in the evidence, which the court is to review for clear error or lack of substantial evidentiary support. *Craig v. Chater*, 76 F.3d 585, 589-590 (4th Cir. 1996). In all, if the Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the court is to affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence is defined as evidence, "which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.* at 642. When the Appeals Council considers additional evidence offered for the first time on administrative appeal and denies review, courts must consider the record as a whole, including the new evidence, in determining whether the Law Judge's decision is supported by substantial evidence. *Meyers v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011); *Wilkins v. Secretary*, 953 F.2d 93, 96 (4th Cir. 1991).

In her brief supporting her complaint, and in oral argument before the undersigned, plaintiff has asserted that the Law Judge did not consider the entire record in reaching his conclusions. She points to her June 14, 2010 letter to the Law Judge, the 135 pages of medical records submitted with the letter, and opening remarks by her counsel before the Law Judge and argues that they provided ample evidence that plaintiff suffers from a personality disorder. (Dkt.

3

No. 11, at 5-6.)[2] In oral argument, plaintiff's counsel pointed to several Axis II diagnoses of "Cluster B traits" and plaintiff's behavior during treatment as indicative of a borderline personality disorder. Plaintiff argues that, despite being placed in the record, the Law Judge made no reference to personality disorders in his decision. *Id.* at 6. She contends that this omission suggests the Law Judge declined or failed to consider the evidence in the first instance, and that the arguments presented in the June 14, 2010 letter explained her two year hiatus in treatment and inconsistencies in using prescribed medication as "parts of a medical history of a lifetime of chaos and instability, essentially one eternally extended period of decompensation from normal functioning." *Id.* Further, plaintiff's counsel has asserted that periods of symptom exacerbation and remission, that is good and bad days, are explained by the very nature of plaintiff's bipolar disorder which the Law Judge found to be a severe impairment. Plaintiff contends that by failing to consider her evidence as a whole and revealing what evidence he accepted or rejected, the Law Judge abused the discretion in discharging his duty to judge the weight of the evidence.

The Commissioner contends in his brief in support of his motion for summary judgment, as well as contended in oral argument before the undersigned, that plaintiff's appeal is without merit, and that there is substantial evidence supporting the Law Judge's RFC finding. First, the Commissioner points out that plaintiff did not allege a personality disorder when she filed for benefits in 2008, despite now claiming that she had been diagnosed with that medically determinable disorder some eight years earlier. (Dkt. No. 16, at 18.) Second, he contends that the references to personality disorders in the evidence from Western State Hospital erroneously were included in her record. Specifically, the Commissioner points out that Dr. Haskin revealed

---

[2] The pages in Plaintiff's Brief were unnumbered. (Dkt. No. 11.) References to page numbers reflect the undersigned's best effort to designate the source of plaintiff's arguments.

4

in his assessment that the personality disorder box was checked in error. *Id.* While there was a reference to a possible personality disorder set forth in the "Social Work Assessment," the Commissioner points out that the reference only was to plaintiff's family history. *Id.* at 19. Additionally, the Commissioner contends that plaintiff's discharge report mistakenly included this reference to family history as a diagnosis of plaintiff's condition, and that support for this contention lies in the "Rationale for Diagnosis" section which makes no mention of any Axis II diagnosis. *Id.*

The Commissioner also offers that the medical evidence fails to support plaintiff's argument. He points out that Marigail Wynne, M.D., plaintiff's treating psychiatrist for more than seven years, identified plaintiff as suffering from an affective and/or anxiety disorder, but that she never diagnosed or treated her for a personality disorder. *Id.* at 20. Further, the Commissioner suggests that, despite the reports of Ashraful Huq, M.D., and Philip Hirsh, M.D., revealing "Cluster B traits" in their working diagnoses, there is not "one reference in the entire record where any medical source actually discussed in any narrative Plaintiff (*sic*) having signs or symptoms of a personality disorder, or where they recommended treatment for such a disorder."[3] *Id.* at 21-22. The Commissioner concludes that plaintiff's mental health professionals discussed and prescribed treatment only for affective and anxiety disorders, impairments that the Law Judge considered and found to be severe but not disabling. *Id.* at 22.

Finally, the Commissioner offers that plaintiff has not pointed to any sign, symptom, or functional restriction identified in her mental health records that the Law Judge did not consider. He argues that the Law Judge considered all the signs, symptoms, and functional limitations

---

[3] The Commissioner also contends that the findings of Robert Kennedy, M.D., plaintiff's current treating physician, further contradict plaintiff's claims. The Commissioner points out that Dr. Kennedy only diagnosed plaintiff with depression and referred to the fact that the Valley Community Services Board was treating plaintiff for bipolar disorder, making no mention of a possible personality disorder. (Dkt. No. 16, at 21-22.)

5

outlined by medical sources, and his determination of plaintiff's RFC is supported by plaintiff's mental health evidence. *Id.* at 22-23. The Commissioner contends that no mental health professional provided evidence that plaintiff could not work, and they essentially described her as functioning well with no limitations beyond those found by the Law Judge. *Id.* at 23-24.

At oral argument, counsel for the Commissioner took the position that the process of exploring any reasons behind plaintiff's behavior is within the domain of medical professionals rather than the court. Further, counsel offered that the Law Judge did not reject plaintiff's claims for failure to receive treatment, but because the records submitted from each facility did not support her claimed limitations. The Commissioner also offered that plaintiff's daily activities, such as the fact that she cared for her daughter, exercised, managed the household, and was, for at least a period, able to function twelve hours a day and feed her landlord's nine horses three times a week, belied her claimed limitations. *Id.* at 24-25. Accordingly, the Commissioner believes that the Law Judge's decision is supported by substantial evidence.

Plaintiff also has submitted evidence to the court for the first time on judicial review. This evidence consists of a photocopy of the DSM-IV sections pertaining to personality disorders and treatment records from Augusta Health Family Practice dated April 1, 2011 through January 11, 2012. (Dkt. Nos. 19, 20.) Plaintiff offers that the provisions of the DSM-IV are intended to inform the Court of the standards for assessing personality disorders. (Dkt. No. 23.) She also contends that the treatment records from Augusta Health are to show her progress in recent treatment for a bipolar disorder. *Id.*

The Commissioner does not believe that the proffered provisions of the DSM-IV are material, contending that they provide only general information about personality disorders and have no bearing on plaintiff's diagnosed impairments or her functioning. (Dkt. No. 25, at 3.) He

6

also argues the proffered treatment records are not material because they do not relate to the relevant period, and because they do not demonstrate that plaintiff suffers from a personality disorder, severe abnormalities, or functional disturbances as a result of her bipolar disorder. *Id.* at 3-4. Further, the Commissioner points out that plaintiff has not demonstrated good cause for not submitting this evidence to the Commissioner in the first instance. *Id.* at 3. Accordingly, the Commissioner opposes any remand for further proceedings based on the evidence offered on judicial review.

The key question here is whether the Law Judge adequately considered evidence that plaintiff suffers a personality disorder in determining her RFC. Certainly, a Law Judge is not required to discuss all aspects of the medical record, but the failure to consider relevant and material evidence or to adequately explain his evaluation of the record evidence would make judicial review impossible. *See DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983). The undersigned disagrees that the Law Judge failed to examine the evidence relating to plaintiff's claim that she suffers personality disorders. In his summary of plaintiff's medical history, the Law Judge thoroughly discussed nearly ten years of treatment records, including those reporting diagnoses of "Cluster B traits." (R. 14-15.) Plaintiff's contention that the report from Western State Hospital was overlooked by the Law Judge fails because it specifically was discussed. (R. 12.)

By the same token, it is true that the Law Judge failed to mention a diagnosis in those records of a personality disorder. However, there are at least two reasons why that diagnosis is entitled to little or no weight. First, it is the only place in the record where a specific reference to a personality disorder is found. Second, the reference appears in the record long before plaintiff

7

claimed to be disabled and is not supported by or even mentioned in any analysis of plaintiff's condition or in the examination notes. (R. 326-347.)

As the Law Judge found, plaintiff has been treated for an affective disorder and an anxiety disorder without reference to a personality disorder in the medical records provided either by her own physicians or by those of the State agency. The diagnoses of "Cluster B traits" never were discussed or addressed as a separate medical impairment. Even in his response to an inquiry from plaintiff's counsel, Dr. Hirsh confirmed he saw plaintiff only once, revealed he could not comment on her "disability status," and he stated that he could not "describe in depth and with certainty what type of affective disorder-if any- the patient may have or what the relationship between that problem and her ability to work might have been." (R. 580.) Moreover, plaintiff never claimed to be suffering from a personality disorder until three days before her administrative hearing, despite alleging several other mental and physical impairments. (R. 578.) Even then, the evidence of personality disorders submitted at the hearing either was cumulative or duplicative and, further, represented only counsel's position on whether plaintiff suffered a personality disorder. (R. 578-579; 581-582.) To put it another way, there is an absence of objective medical evidence to support plaintiff's claim that she suffers a disabling personality disorder. *See Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996).

It is also noteworthy that there is little or no medical evidence supporting plaintiff's subjective complaints about the severity of her impairments. No medical professional opined that plaintiff was incapable of working, and, as stated above, even Dr. Hirsh expressed his unwillingness to support her application for disability benefits. (R. 580.) Plaintiff's Global Assessment of Functioning ("GAF") scores, which ranged in severity from 48 to 70, are not sufficiently definitive to have compelled the Law Judge to have reached any other conclusion

8

than that, while plaintiff suffered severe impairments, she was not disabled under the Act.[4] (R. 332, 409, 439, 492, 541, 655, 658.)

Certainly it can be argued that the physical and mental capacities assessment of Dr. Kennedy provides some treating source support for plaintiff's claim. (R. 466-476.) The Law Judge considered his physical assessments but found that they were in conflict with the other evidence in the record.[5] Further, he revealed that, even if he accepted this evidence at face value, it suggested only that plaintiff was limited to sedentary work. (R. 22-23, 466-475.) These findings are supported by substantial evidence. Dr. Kennedy's treatment notes reveal minimal physical findings, diagnosing plaintiff's hypertension as stable, her gastroesophageal reflux disease and osteoarthritis as controlled, and reporting improvement in her pain levels. (R. 562-569, 700.) Further, his assessment of her work-related abilities certainly suggests that plaintiff meets the physical requirements of sedentary work. (R. 466-472.) Dr. Kennedy further identified no more than moderate mental impairments in the categories addressed, which again falls short of establishing plaintiff is disabled on the basis of her claimed mental impairments. (R. 473-475.) Further, neither his opinion nor his treatment records ever reflect a diagnosis of a personality disorder or mention treatment for same. (R. 466-475, 562-569, 700.)

There is no question that a claimant may rely on the subjective effects of an impairment to support a claim for benefits. However, the Law Judge found plaintiff's statements about the intensity, persistence, and the limiting effects of her symptoms were not entirely credible. The record reveals conflicts regarding her alcohol use (R. 21, 56-57, 409, 424, 446.), her weight loss

---

[4] Plaintiff's GAF score was 14 on admission to Western State Hospital in July 2000. However, plaintiff's stay at Western State Hospital was long before the relevant time period of this case, and she improved to 51 by the time of her release. (R. 332.)

[5] The Law Judge found that Dr. Kennedy's opinion was not supported by the record, and he noted that Dr. Kennedy's treatment notes do not reflect significant ongoing psychological symptoms, only limited physical findings. (R. 22 (FN6), 562-569, 700.)

9

(R. 21, 44-45, 565.), her daily activities, and other work-related activities in which she engaged on a regular basis (R. 21, 35-37, 52, 540.). The resolved those conflicts, and the undersigned is of the view that substantial evidence supports that resolution and his ultimate finding that plaintiff's testimony concerning the effects of her subjective symptoms was not entirely credible.

Evidence submitted on judicial review may be a basis upon which the court can find good cause to remand for further proceedings. However: (1) the evidence must relate back to the time the application was first filed, and be new (not merely cumulative); (2) it must be material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there must be good cause for the plaintiff's failure to submit the evidence before the Commissioner; and (4) plaintiff must present to the court at least a general showing of the nature of the new evidence so that the court can decide whether it likely would have had an effect on the decision had it been presented in the first instance. 42 U.S.C. § 405(g); *See also Borders v. Heckler,* 777 F.2d 954, 955 (4th Cir.1985).

The undersigned finds that the evidence submitted on judicial review is not material and likely would not have changed the Commissioner's decision had it been before him or the Law Judge in the first instance. The provisions of the DSM-IV certainly are instructive, but cannot supplant the need for medical evidence identifying plaintiff's impairments and their effect on her vocational functioning. Further, the additional medical records fail to demonstrate that plaintiff suffers impairments which produce vocational limitations beyond those found by the Law Judge. Good cause has not been shown to remand the case for further proceedings.

For all these reasons, it is RECOMMENDED that an Order enter GRANTING the Commissioner's motion for summary judgment, AFFIRMING the Commissioner's final decision, and DISMISSING this action from the docket of the court.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(l)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to transmit a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: /s/ _____
U.S. Magistrate Judge

4/5/12
Date